# Atchison, Topeka & Santa Fe Railroad Company v. Chicago & Western Indiana Railroad Company.

1. INTEREST—*What it is.*—Interest may be defined to be a compensation usually reckoned by percentage for the loan, use or forbearance of money. Interest in actions at law arises from the statute. At common law it was synonymous with usury.

2. SAME—*Vendee of Real Property in Possession—Rents and Profits—Purchase Money.*—The general rule in equity is that a vendee who has taken possession of real property under a contract of sale can not have the rents and profits arising from such possession without paying interest upon the purchase money where it remains in his hands.

3. SAME—*In Equity.*—Interest, in equity, is allowed because of equitable considerations. Equity follows the law, and ordinarily, if it gives interest it does so because, under the statute, the party is entitled to it; but a court of equity, subject to rules of law, gives or withholds the interest as, under all the circumstances of the case and the law applicable thereto, it deems equitable and just.

4.  SAME—*When a Purchaser Will be Compelled to Pay in Equity.*—Equity considers that which is agreed to be done, as actually performed, and a purchaser is, therefore, entitled to the profits of the estate from the time fixed upon for completing the contract, whether he does or does not take possession; and as from that time, the money belongs to the vendor, the purchaser will be compelled to pay interest.

5   SAME—*Delay by Default of Vendor—Purchase Money "Lying Dead."*—If delay is occasioned by the default of the vendor, and the purchase money has lain dead, the purchaser will not be compelled to pay interest. The purchaser must, however, in general, give notice to the vendor that the money is lying dead.

6.  SAME—*When Purchase Money is Not Considered as Lying Dead.*—If the money is not actually and *bona fide* appropriated for the purchase, as if the purchaser derives any advantage from it, or in any manner makes use of it, he will be compelled to pay interest.

7.  SAME—*The Rule at Law—Money Not Due.*—At law, interest is not recoverable because of the withholding of money which by the terms of a contract is not due, but in contracts for the sale of real property, equity proceeds upon the principle that it is not just for a vendor to have the use and enjoyment of the premises and also the purchase money, at the same time, and consequently allows the vendor to recover interest.

8.  SPECIFIC PERFORMANCE—*Conveyance Must Correspond with the Contract.*—Where a person entered into a contract with another for the sale of real property conditioned upon the payment of the purchase price to convey the property by a deed with covenants of warranty, the party purchasing is entitled to a deed of conveyance in fee simple, absolute, with covenants of warranty, and without defeasance or qualification, on the payment of the purchase price fixed in the contract. The vendor can not insert in the deed provisions continuing in force or otherwise, giving effect to special provisions of the contract, unless it is so stipulated.

**Memorandum.**—Bill for specific performance. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed April 30, 1894.

## STATEMENT OF THE CASE.

Appellant and appellee made a contract, the parts of which, material to an understanding of this case, are as follows:

This agreement made and entered into this      day of      , A. D. 1887, by and between the Chicago & Western Indiana Railroad Company, a corporation of the State of Illinois, party of the first part, and the Atchison, Topeka

& Santa Fe Railroad Company, in Chicago, a corporation of the same State, party of the second part.

Witnesseth: That as a part and parcel of a certain contract of lease about to be completed between the parties hereto, and with other parties, and only on condition that the same is finally completed, executed and confirmed by the stockholders of the party of the first part hereto, the party of the first part agrees to sell to the said party of the second part the following described real estate, to wit:

First:   *   *   *

Second:   *   *   *

The party of the second part agreeing to pay to the party of the first part for the property first above described the sum of two dollars ($2) per square foot, to be paid as follows:

Whereas, in and by the said lease above referred to, the party of the first part is about to agree with the party of the second part to complete the alignment of its railroad tracks from 49th street northerly to the St. Charles Air Line Railroad, and also to construct a viaduct on 18th street, and to complete four main tracks between Clark street and 49th street, as will more fully appear by the said contract of lease about to be executed between the parties hereto and the Chicago, Santa Fe and California Railway Company and Anthony J. Thomas and Charles Edward Tracy, trustees; the same being the lease hereinbefore referred to.

Now, therefore, it is agreed that the purchase price of the property first above described shall become due and payable upon completion by the party of the first part of its alignment as aforesaid, and of its four main tracks as aforesaid, as far north as 16th street, and the completion and construction of the said viaduct.

Possession of both of the properties above described shall be given by the party of the first part to the party of the second part, upon the said agreement or lease above referred to being confirmed by the stockholders of the party of the first part and fully executed and delivered.

And it is further agreed, that upon the performance of the stipulations of this agreement as to the time when the purchase price of the property first above described shall become due, and a release of the said two mortgages, liens placed on the said property by the party of the first part, and the tender to the party of the second part of a deed with covenants of warranty conveying said property first above described to the party of the second part, the party of the second part shall at once pay the purchase price therefor; it being understood that the party of the second part is satisfied to receive the title now existing in the party of the first part to said several tracts of land, together with releases of all mortgages placed thereon by the party of the first part, and to rely for its title to said property upon covenants of warranty to be contained in such deeds.

It is further agreed, that prompt payment of the purchase moneys at the times herein limited is of the essence of this contract as to the sale of said lands, and if the purchase price named for either or both of said properties shall not be promptly paid at the times herein limited, then this contract to convey any or either of said lands shall be void, and the party of the first part may at any time thereafter declare the said agreement to convey at an end, and by entry or suit, or either at its option, recover the possession of and its estate, and right and possession of said land as if this contract had never existed.

July 5, 1889, appellant not having received a conveyance of the property first described in said agreement, filed its bill for a specific performance, in which, among others, were the following allegations :

And your orators show that in accordance with the provisions of said agreement of the — day of March, 1887, your orator forthwith entered upon the possession of, and has since held and occupied all the property and real estate described in the said contract, both that which is therein mentioned as " first," and that which is therein mentioned as " second." That afterward, about the 17th day of June, A. D. 1887, the Chicago & Western Indiana Railroad Company

having procured releases of the two mortgages mentioned in said agreement, tendered to your orator a deed conveying said property secondly described in said agreement, in fee simple, which deed was duly delivered to and accepted by your orator, and the consideration therefor paid to said Chicago & Western Indiana Railroad Company, as described in said agreement.

Your orator further shows that subsequently, to wit, on or before the first day of January, 1889, the said Chicago & Western Indiana Railroad Company completed the align ment of its railroad tracks and constructed a viaduct on 18th street, and completed its four main tracks between Clark street and 49th street, as prescribed in said agreement, and thereupon said Chicago & Western Indiana Railroad Company became entitled to demand the purchase price stipulated in said agreement for the conveyance of the property firstly described therein, and your orator became entitled to a deed of conveyance therefor in fee simple, absolute, with covenants of warranty, upon release of the two mortgages resting upon said property as aforesaid, which releases, as your orator is informed and believes, said Chicago & Western Indiana Railroad Company could and still can procure without difficulty, by simply applying therefor to the trustees named in said mortgages; that on or about the 1st day of March, 1889, your orator made known to the said Chicago & Western Indiana Railroad Company that it was ready to pay the said stipulated purchase price, and requested that the release of said mortgages be procured, and that a deed of conveyance be made in accordance with said contract. And your orator avers that it then was and has ever since been ready in good faith to pay the full amount of the purchase price of said land as stipulated in said agreement, upon receiving a suitable deed of conveyance therefor. And your orator shows that both the said Chicago & Western Indiana Railroad Company and your orator have agreed that no exception or advantage be taken by either party on account of the failure of said Chicago & Western Indiana Railroad Company to make an actual tender of a

deed, or of your orator to make an actual tender of the purchase price of said land.

But now so it is, may it please your Honors, that the said Chicago & Western Indiana Railroad Company, contriving how to injure your orator and to defraud him of his rights in that behalf, wholly refuses to make or deliver to your orator any such deed of conveyance of said land firstly described in said agreement, as under and by said agreement your orator is entitled to receive, and said Chicago & Western Indiana Railroad Company has hitherto refused and still refuses to make or deliver to your orator any deed of conveyance to said property, except a deed which shall contain provisions whereby the title of said property shall revert to the said Chicago & Western Indiana Railroad Company, or its successors, by way of forfeiture, upon the breach by your orator or its successors of any of the terms, covenants and conditions of said lease.   And for so refusing and insisting the Chicago & Western Indiana Railroad Company assigns various unfounded pretenses, all of which actings and doings are contrary to equity and good conscience.

December 12, 1891, appellee filed its answer, in which it admitted the making of the contract as set forth in the said bill, and most of the allegations of said bill, its answer containing, after giving reasons for such position, the following:

This defendant, further answering, says that it has been at all times ready and willing, on payment of the purchase price of said land, to execute and deliver to the complainant a deed with covenants of warranty, conveying said property first described to said complainant, with a suitable provision therein, continuing in force or otherwise, giving effect to said provision of said agreement making the sale of said real estate a part and parcel of said contract of lease.

The cause came on to be heard in 1893.   The certificate of evidence filed in said cause contains the following:

Be it remembered that on the final hearing of the above entitled cause, before any evidence was introduced in said cause, counsel for the respective parties made opening state-

ments of the case to the court. That, in the course of the opening statement made for the defendant, counsel for the defendant stated that the defendant would not offer any evidence in support of the allegations of its answer, except the evidence hereinafter set forth; and that, under the pleadings and on the evidence which would be offered, no question would be raised by counsel for the defendant, as to the right of the complainant to a decree of specific performance, requiring the defendant to execute and deliver a deed of conveyance in the form prayed for in the bill, namely, a deed of conveyance in fee simple, absolute, with covenants of warranty, and without any defeasance or qualification, on the payment by the complainant of the purchase price fixed in the contract, and interest thereon from the 1st day of January, 1889; but that the defendant would contend and insist that any decree which might be entered, should provide for the payment by the complainant of interest on the purchase price from said 1st day of January, 1889.

That, after the said opening statements by counsel, the pleadings were read to the court.

That on hearing, the following facts were admitted by the respective parties in open court, with like effect as if duly proved:

1. That the defendant paid the taxes levied for the year 1887, on all the property described in said contract of June 1887, set out in the complainant's bill; and thereafter in the year 1889, the complainant paid all the taxes levied and assessed on said property for the year 1888, and has since paid the taxes levied and assessed on said property for the years 1889, 1890, 1891 and 1892, respectively.

2. That the area of the property first described in said contract is ninety-eight thousand seven hundred and twenty-four and eight-tenths (98,724.8) square feet.

3. That the description set forth in the final decree entered herein is a correct description of the property firstly described in said contract.

That no evidence in addition to said admissions of fact was offered on said hearing by the complainant.

That in addition to said admissions of fact, the defendant gave in evidence on said hearing, also, certain letters between the parties from which it appears that the only difference existing between them out of which this suit had grown was in reference to the form of deed which the appellant was entitled to have. A final decree was entered in the case July 29, 1893. and is in part as follows:

And thereupon, counsel for the respective parties having been heard, and the court being fully advised in the premises, finds that the equities are with the complainant. That on or about the first day of March, 1889, said complainant made known to the defendant, that it was ready to pay the purchase price stipulated to be paid for the property firstly described in said contract, and requested that releases of said mortgages be procured and that a deed of conveyance be made by said defendant. That thereupon a question arose between the complainant and the defendant as to the form of conveyance to which the complainant was entitled. That the complainant demanded that the defendant execute and deliver to it a deed of conveyance in fee simple, absolute, with covenants of warranty, without any clause of defeasance or any limitation or qualification. That the defendant was ready and willing, on payment of the purchase price, to execute and deliver to the complainant a deed with covenants of warranty, conveying said property, with a suitable provision therein, continuing in force or otherwise, giving effect to the provision of said contract, making the sale of said real estate a part and parcel of said contract of lease. That both the defendant and the complainant agreed that no exception or advantage be taken by either party on account of the failure of the defendant to make an actual tender of such a deed, as the defendant was then willing to give, or of the complainant to make an actual tender of the purchase price of said land; and that, down to the time of the hearing of this cause, defendant did not tender to complainant a deed in any other form than that which is above found defendant was willing to make.

And the court further finds that the area of the property

first described in said contract is ninety-eight thousand, seven hundred twenty-four and eight-tenths (98,724.8) square feet, and that the purchase price therefor, under said contract, is two dollars per square foot, and amounts to one hundred ninety-seven thousand, four hundred forty-nine and sixty-hundredths dollars ($197,449.60). That the deed which the complainant was and is entitled to receive from the defendant for said premises, is a deed of conveyance in fee simple, absolute, with full covenants of warranty and without any restriction, limitation or qualification, and that the true and proper description of said premises first mentioned and described in said contract is as follows:

(Property hereinbefore described as first.)

The court thereupon decreed that complainant pay to the defendant within ninety days said sum of one hundred ninety-seven thousand four hundred forty-nine and sixty-hundredths dollars ($197,449.60) with interest thereon at the rate of six per cent per annum from the first day of January, 1889, to the first day of July, 1891, and at the rate of five per cent per annum from the first day of July, 1891, to the date of payment; and that such payment being made appellee should at the same time deliver to the appellant a deed of conveyance of the property in fee simple, absolute, with full conveyances of warranty, and procure and deliver to the appellant good and sufficient releases in law of the said mortgages on said property above described, and also pay the costs of the suit; and that in default of such payment the complainant's bill do from thenceforth stand dismissed out of court with costs to be taxed, and that thereupon appellant surrender the said premises to appellee.

APPELLANT'S BRIEF, EDGAR A. BANCROFT, ELDON J. CASSODAY AND GEO. R. PECK, ATTORNEYS.

Appellant contended that there is no provision in the contract for interest on the purchase price. If interest is due, it is because the purchase price became due and was not paid. The law providing for interest is merely a rule for the uniform liquidation of damages for the use or unlawful

·withholding of the money of another. It imposes no liability for interest in the absence of a neglect or violation of legal duty—or for the use of one's own money.

Lord Chancellor Thurlow in Calcraft v. Roebuck, 1 Ves. Jr. 221, decided in 1790, that where the vendee takes possession before he is entitled to it by the strict terms of the contract, he is bound to pay interest on the purchase price from that day, even though the delay in the execution of the contract was due to the unreasonable claims of the vendor.

The reason of this rule, as repeatedly stated, is that the vendee having obtained, outside the terms of his contract, the possession of the premises, the vendor should have, in like manner, the benefit of the purchase money. But this rule does not apply to cases where the contract itself gives possession, or where there is no provision for interest. De Visme v. DeVisme, 1 Mac. and G. 336; Monk v. Huskisson, 4 Russell's Ch. 122, note a; Williams v. Glenton, L. R., 1 Ch. Ap. 206, 211; Tewart v. Lawson, 3 Sm. & Gif. 307, 312; Riley v. Streatfield, L. R., 34 Ch. Div. 388; Jones v. Mudd, 4 Russell, 122; Leggott v. Met. Ry. Co., L. R., 5 Chan. Ap. 716, 719; Winterbottom v. Ingham, 14 Law Jour., Pt. II, 298; Lofland v. Maull, 1 Del. Ch. 9, 12 Am. Dec. 106; Lombard v. Chicago Sinai Congregation, 64 Ill. 477, 486; Smith's Estate, Ralshouse's Appeal, 152 Pa. St. 102, 104, 25 Atl. Rep. 315.

APPELLEE'S BRIEF, HERRICK, ALLEN & BOYESEN AND OSBORN & LYNDE, ATTORNEYS.

A party can not, as a matter of right, call upon a court of equity to specifically enforce the performance of a contract for the sale of land, but the exercise of the power rests in the sound discretion of the court, in view of the contract and the surrounding circumstances. Beach v. Dyer, 93 Ill. 301.

The complainant is required to make out a much stronger case to support an application for a specific performance of a contract than the defendant is required to show to resist it. Short v. Kieffer, 142 Ill. 266; C., B. & Q. R. R. Co. v.

Reno, 113 Ill. 43; Chicago Municipal Gas Light Co. v. Town of Lake, 130 Ill. 42; Dentilman v. Gilbert, 140 Ill. 602; Leonards v. Crane, 147 Ill. 52.

This discretion is not a mere arbitrary discretion, but the court in exercising it is governed by the general principles established by courts of equity.

He who seeks equity must do equity.

And a familiar instance of the application of this principle is in requiring the payment of interest as a condition of equitable relief in cases where there is no obligation at law to pay interest, as on a bill filed to set aside a tax sale as a cloud or where usury is set up.    Barnett v. Cline, 60 Ill. 205; Mappes v. Sharp, 32 Ill. 13, at 22; Tooke v. Newman, 75 Ill. 215.

Another general principle is that in decreeing specific performance equity considers that which was agreed to be done as having been done, and will place the parties as nearly as possible in the same position they would have been in if the contract had been performed on the day fixed for performance.

The vendee of land who is in possession and is not in default under his contract, is in equity the owner, subject to the lien of the vendor for the unpaid purchase money.    And because of this ownership, the vendee in possession has a right to the free use and enjoyment of the rents, issues and profits, so long as he is not in default under the contract. Baldwin v. Poole, 74 Ill. 97; Smith v. Price, 42 Ill. 399; Baker v. Bishop Hill Colony, 45 Ill. 264; Stevenson v. Loehr, 57 Ill. 510; Lombard v. Chicago Sinai Congregation, 64 Ill. 477.

He can create an easement upon any part of the premises, which will be valid and binding, but liable to be defeated thereafter by his default under the contract.    Baldwin v. Poole, 74 Ill. 97.

In the same way he may make a valid mortgage of the property, subject to the lien for the unpaid purchase money. Baker v. Bishop Hill Colony, 45 Ill. 264.

And because of this ownership, and without any provision

in the contract requiring it, it is his duty to pay all taxes assessed on the property. Stevenson v. Loehr, 57 Ill. 510; Miller v. Corey, 15 Ia. 166; Forbes v. Purdy, 69 Mo. 601; Sherman v. Lavery, 6 Fed. Rep. 505.

When a deed vesting the legal title is made, it has relation back to the date of the contract. Schneider v. Botsch, 90 Ill. 577; Sutherland v. Goodenow, 108 Ill. at 537; Gudgel v. Kitterman, 108 Ill. 56; Welch v. Dutton, 79 Ill. 465.

The rule that the purchaser in possession shall pay interest on the unpaid part of the purchase money will be applied even in cases where the delay arises from the neglect of the vendor, and the purchaser makes no actual profit out of the land. The act of taking possession, said Grant, M. R., is an implied agreement to pay interest; for so absurd an agreement as that a purchaser is to receive the rents and profits, to which he has no legal title, and the vendor is not to have interest, as he has no legal title to the money, can never be implied. (Sec. 1419.) Fry on Specific Performance of Contracts (3d Am. Ed.), 649, 651.

So strongly does the court hold to this principle—that a purchaser in possession shall pay interest on the unpaid purchase money, that it will look at any contract which appears to prevent the application of this rule, by the light of this general principle of justice, and, it seems, refuse execution of it where it grossly violates this principle; for a court of equity interposes only according to conscience.

This rule is expressly held in the following English cases: Fludyer v. Cocker, 12 Ves. 25; Powell v. Martyr, 8 Ves. 145; Birch v. Joy, 3 H. L. Cas. 565; Ballard v. Shutt, L. R., 15 Chi. Div. 122; Att'y General v. Christ Church, 13 Simons (36 Eng. Ch. R.), 212.

And has been uniformly followed in this country. Selden v. James, 6 Rand. 464; Rutledge v. Smith, 1 McCord, 231; Brockenbraugh v. Blythe, 3 Leigh, 619; McKay v. Melvin, 1 Ired. Eq. 73; Breckenridge v. Hoke, 4 Bibb. 272; Stevenson v. Maxwell, 2 Comst. 413; Steenrod v. W. P. & B. R. R. Co., 27 W. Va. 1; Covell v. Cole, 16 Mich. 228; Minard v. Beaus, 64 Pa. St. 411; Wilson v. Herbert, 25 At.

R. 685; Bostwick v. Beach, 105 N. Y. 661; Boyle v. Rowand, 3 Desauss. 555; Lombard v. Chicago Sinai Congregation, 64 Ill. 478, 75 Ill. 271; Phillips v. So. Park Comm'rs, 119 Ill. 629.

Mr. Justice Waterman delivered the opinion of the Court.

Appellant, while conceding the general rule in equity to be that a vendee who has taken possession of real property under a contract of sale, can not have the rents and profits arising from such possession without, at the same time, paying interest upon the purchase money if it has remained in his hands, insists, with great ability, that this case is to be distinguished from the numerous cases in which such rule has been announced, because of the existence of three things in the present instance, not to be found in any of the cases cited by appellee. These things are, as stated by appellant:

First. That the contract in this case expressly gave the vendee immediate possession of the land and set no limit to the period of that possession.

Second. That the contract did not contain any provision for interest on the purchase price.

Third. That the delay in completing the sale was due solely to the willful and excuseless conduct of the vendor itself.

Interest may be defined to be a compensation usually reckoned by percentage for the loan, use or forbearance of money. Interest in actions at law arises from the statute.

At common law interest was synonymous with usury. Abbot's Law Dictionary; City of Pekin v. Reynolds, 31 Ill. 529; Ill. Cent. R. R. Co. v. Cobb, 72 Ill. 148.

Interest in equity is allowed because of equitable considerations. Equity follows the law, and ordinarily, if it give interest, does so because, under the statutes, the party is entitled to it; but a court of equity, subject to rules of law, gives or withholds interest as under all the circumstances of the case and the law applicable thereto, it deems equitable and just.

The rule as to interest in the case of the sale of real estate is stated in Sugden on Vendors (8th Am. Ed.) 314, as follows:

"Equity considers that which is agreed to be done, as actually performed, and a purchaser is, therefore, entitled to the profits of the estate from the time fixed upon for completing the contract, whether he does or does not take possession of the estate; and as from that time, the money belongs to the vendor, the purchaser will be compelled to pay interest for it, if it be not paid at the day.

But if the delay be occasioned by the default of the vendor, and the purchase money has lain dead, the purchaser will not be obliged to pay interest. The purchaser must, however, in general, give notice to the vendor that the money is lying dead; for otherwise there is no equality; the one knows the estate is producing interest, the other does not know that the money does not produce interest. * * * But even if a purchaser gave such notice, yet if the money was not actually and *bona fide* appropriated for the purchase or the purchaser derived the least advantage from it, or in any manner made use of it, the court would compel him to pay interest."

And Fry on Specific Performance of Contracts (3d Am. Ed., Sec. 1419) speaks as follows: "The rule that the purchaser in possession shall pay interest on the unpaid part of the purchase money will be applied even in cases where the delay arises from the neglect of the vendor, and the purchaser makes no actual profit out of the land. 'The act of taking possession,' said Grant, M. R., 'is an implied agreement to pay interest; for so absurd an agreement as that a purchaser is to receive the rents and profits to which he has no legal title, and the vendor is not to have interest, as he has no legal title to the money, can never be implied.'

And the same author at Sec. 1425 states the rule as follows: So strong does the court hold to this principle—that a purchaser in possession shall pay interest on the unpaid purchase money, that it will look at any contract which appears to prevent the application of this rule by the light

of this general principle of justice, and, it seems, refuse
execution of it where it grossly violates this principle; for "a
court of equity interposes only according to conscience."

In Sec. 429 of Pomeroy on Specific Performance the rule
is stated as follows :   " The general rule is well settled that
where the contract is not completed until after the time
stipulated for that purpose, but the court, nevertheless,
decrees a specific performance, it will adjust the equities of
the parties by placing them as far as possible in the same
position which they would have occupied had the agreement
been completed at the prescribed day, and to that end it will
allow the purchaser the rents and profits, and to the vendor
interest upon the purchase price from and after that date."

The same author in note 2 to the above section, says :
" The vendee is liable for the interest as stated in the text,
even when the purchase money has lain all the time in his
hands, 'dead'—that is, unused, idle and producing no
interest, income or profit, provided the delay was caused by
his default (Calcraft v. Roebuck, 1 Ves. 221, Enraght v.
Fitzgerald, 2 Ir. Eq. Rep. 87), but not when the delay was
caused by the vendor's fault.   Howland v. Norris, 1 Cox, 59.
But even in the last case, if the vendee would escape liabil-
ity to pay interest, he must actually set aside the money and
appropriate it for the vendor, must not in any way derive a
benefit from it; and must notify the vendor of these facts,
and that the money is thus lying idle.   Since if the vendee
does not set apart and appropriate the money, or if he derives
any benefit from it, he must pay interest, although the delay
is the vendor's."

Counsel for appellant, while, as we understand, conceding
the general rule as above set forth, insist with great force
that interest is never given because of the withholding of
money which, by the terms of the contract, is not due.   Such
is undoubtedly the rule at law, and for this reason the case of
Minard v. Beans, 64 Pa. St. 411, the facts of which were in
many respects analogous to that of the present case, was
rightly decided; the court holding that although the defend-
ant had taken possession before the money became due, he

could not be held to pay interest from the date of taking possession, because interest at law is not allowable on money, the payment of which is not due.

Equity proceeds upon the principle that it is not just for a vendor to have the use and enjoyment of the premises and also to have the use of the purchase money, and consequently it in many cases allows the vendor to recover interest, although the non-payment of the purchase money may have been caused by his fault; but a court of equity will never do this if the allowing of such interest seems to it inequitable. As, if the payment of the purchase money was withheld because the vendor failed to make such title as he had agreed to convey, or fail to present such an abstract of title as he had agreed to furnish, in such cases courts of equity have refused to require the vendee in possession to pay interest. It is to be observed in respect to such cases that not only was the vendor at fault, that is, had failed to comply with the terms of his contract, but there was nothing that the vendee could do to relieve himself from the situation. He could not tender the purchase price, because the title not being shown to be good by making such tender, he would have run the risk of losing his money. In the present case it is recited in the contract that the vendee is satisfied to receive the title the vendor then had, with releases of mortgages placed thereon by the vendor, and to rely for its title to the property upon covenants of warranty to be contained in the deed.

There has, therefore, in the cause under consideration, never been any question of title. Appellant could with entire safety at any time have relieved itself from the payment of interest by making a tender of the contract price, and keeping such tender good. Or it could have deposited such money in some suitable place for the use of the vendor.

We do not regard the three distinguishing features, said by appellant to exist in this case, as sufficient to take the case at bar out of the general rule existing in equity in respect to the payment of interest. The contract did give to the vendee immediate possession, and it failed to provide

for the payment of interest upon the purchase price, because such payment was made to depend upon the doing of certain things by the vendor, and it was when those things were done that the purchase money was to be paid. Those things having been done, the purchase money became due, but contemporaneous with the payment of such money the vendor was to make a deed with full covenants of warranty. The vendor refused to make such deed, and, consequently, could not in any action at law have recovered interest upon the purchase money. While, however, such refusal on the part of the vendor was willful and may be said to have been inexcusable, yet it was not in any sense wicked or fraudulent.

The vendor seems to have acted in perfect good faith, and upon what it honestly understood were its rights. If, therefore, the vendor for all the time during which it ought to have been in the possession and enjoyment of the purchase money is not to receive interest thereon, and the vendee, while having had during this period the use and enjoyment of the land, is to be allowed to retain the interest which it is presumed to have made on the purchase money, the spectacle will be presented of a court of equity punishing the vendor for in good faith acting upon a misconception of its rights, and rewarding the vendee because of such misconception, when at the same time it is not shown that the vendee has suffered any loss because of such conduct on the part of the vendor.

The vendee in this case is not required to pay interest because of any default upon its part, for it has not been in default; but it is made to pay that which it is presumed to have earned upon the purchase money remaining in its hands.

A court of equity regards the rights of the parties as if those things agreed to be done had been done, and when under a contract of sale of real estate the time for the delivery of possession and payment of the purchase price has arrived, thenceforth the land is treated as belonging to the vendee, and the receipts and profits thereof, by whomsoever

received, as being held for his use; while at the same time the purchase money is considered as being the property of the vendor, and the interest earned thereon, or that which it is presumed was earned thereon, is treated as belonging to the vendor. In the present case the vendee has had the rents and profits of the property purchased by it, and the vendor is given the interest presumed to have been earned by the purchase money held these years by the vendee.

It is quite true, as is urged by the vendee, that by the terms of the contract this purchase money has not been due because of the failure of the vendor to execute such a deed as it contracted to deliver. The purchase money was not due, not because a date fixed in the contract had not arrived, but merely because the instrument which vested the legal title in the vendee had not been executed by the vendor. The question presented in the present case is not, has the vendor so complied with the terms of the contract as to the execution of a deed that the money coming to it is due, but what, under all the circumstances and the rules of law applicable to this case, is it equitable should be done.

Had the vendee shown that in consequence of the refusal of the vendor to make such a deed as it contracted to deliver it, the vendee had suffered a loss, the chancellor undoubtedly would, in making his decree, have allowed to it compensation for such loss. So too, if it had appeared that the rents and profits of this property for the period during which the vendor was improperly refusing to make a deed were less than the interest presumed to have been earned upon the purchase money, the chancellor would not have allowed to the vendor interest in excess of such profits; for the vendor can not, by his default, whether willful or arising from circumstances beyond his control, either make a profit to himself or compel the vendee to sustain a loss. Jones v. Mudd, 4 Russ. 122; Esdale v. Stevens, 1 Sim. & Stu. 122; King v. Ruckman, 24 N. J. Eq. 556; Leggott v. Metropolitan R. W. Co., L. R., 5 Ch. App. 716.

Counsel for appellant urge that as the contract provided that appellant should have immediate possession of the land

in question, some consideration must have been given by appellant for such agreement, and that the decree of the court allowing interest to appellee, the vendor, is in effect to deprive the vendee of the benefit of the plain provision of a contract, for which provision it must be presumed to have given an adequate consideration.

The contract between the parties did indeed provide that the vendee might go at once into possession of the premises sold, and that the vendor should proceed to make certain improvements upon said premises and procure the release of certain incumbrances thereon, and when this had been done the purchase price was to be paid, a deed being at the same time given by the vendor. It was not, so far as appears, however, contemplated by either of the parties, that a misunderstanding between the vendor and vendee would arise as to the form of the deed to be made by the vendor, and the contract contains no provision as to what the rights of the parties should be as to rents, profits and interest in case of such misunderstanding, and a delay in the making of such deed, consequent thereon.

We are therefore called upon to consider the rights of the parties in respect to a condition of affairs not contemplated when the contract was made and not provided for in that instrument. At this juncture we do, indeed, look at the contract to determine what was the duty of each of the parties, and what their obligations and situation toward each other were, and having so done, the general principles of equity applicable to such a state of affairs as is found to exist, must control in respect to the payment of interest. A general principle of equity is, that a vendee can not at the same time have the rents and profits of the property sold and also the use of the purchase money, and this, although the failure to pay the purchase money may have been owing to the fault of the vendor; provided, nevertheless, that the vendee may, by making a tender of the purchase money and keeping the same good, relieve himself from the burden of interest; and provided, also, that if the situation of affairs was such that the vendee could not with safety make such

tender, or if the vendee, on account of the default of the vendor, has sustained a loss, or if the rents and profits of the property are not equal to the interest, that the vendee will not be required to pay anything, or at least not such an amount as that the vendor, by reason of any duty omitted or fault committed by him, shall make a profit.

It is quite true, as appellant contends, that the meaning of contracts does not depend upon the party who asks for their interpretation. What we are concerned with at present is not so much the meaning of the contract as the situation that arose and exists in consequence of a misunderstanding not contemplated when the contract was made. The action of the court in awarding to the vendor that which it could not have obtained in an action at law, is no different from that which a court of equity does in many cases, as, in the familiar instance where the property of a party has been sold for taxes, the purchaser can not, in an action at law, compel the owner to refund to him the amount he has so paid; it is not owing by or due from the owner; while if the owner file a bill to remove the cloud created by such sale, a court of equity will, as a condition of such removal, require such purchaser to pay not only the amount of the taxes for which the property was so sold, but also interest thereon.

Substantially, it is now conceded that the interpretation put upon the contract by the vendee was right; and if the court was of the opinion that the vendor had, in insisting upon a different interpretation, acted in any way in bad faith, it would not allow to the vendor the interest which has been awarded. Under the circumstances, the vendee not being shown to have sustained any loss on account of the default of the vendor, it not being claimed that the rents and profits are not equal to the interest presumed to have been earned upon the purchase money, although the vendor was wrong in its interpretation of the contract, yet, having acted in good faith, a court of equity will not inflict upon it the punishment of losing the rents and profits of the estate it had sold and given possession of, and also the interests presumed to have been earned by the purchase money.

The court has taxed the costs in this case against the vendor and it might, perhaps, have properly insisted that as a condition of the allowance of interest the vendor should pay a reasonable sum as a fee for the necessary employment of solicitors by the vendee. This has been, however, not seen fit to do, and we see no sufficient reason for interfering with its discretion in this regard.

The decree of the Circuit Court is therefore affirmed.